IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-8230
_____


UNITED STATES OF AMERICA,

                              Plaintiff-Appellant,

                    versus

WILLIAM ROBERT RICH,

                              Defendant-Appellee.

_____

Appeal from the United States District Court for the
Western District of Texas

_____

(           May 21, 1993           )

Before GOLDBERG, JOLLY, and WIENER, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

    The question in this case is whether an individual's affirmative response to a police officer's request to "have a look in" the individual's automobile is the equivalent of a general consent to search the automobile and its contents, including the individual's luggage. With some reluctance, but drawing from precedent, we hold that the search does not violate the Fourth Amendment. We thus reverse the district court's suppression of the seized contraband.

I

    We write today because the light bulb for the license plate on William Robert Rich's pickup truck burned out. Thus, at 11:35 p.m.

on the night of January 16, 1991, Texas Department of Public Safety Trooper August Crais stopped Rich on Interstate 35 in Williamson County to issue him a warning citation for the burned-out bulb.

In response to the trooper's request for his driver's license, Rich volunteered that he was travelling to Mesquite to purchase some automobiles. Trooper Crais asked Rich how long he would be staying in Mesquite, and Rich replied that he would be there "just for the day." Crais told Rich of the reason for the stop, and asked Rich for proof of insurance on the pickup. While Rich returned to the truck to get the insurance papers, Crais radioed Rich's driver's license number in to the police dispatcher, and requested a license check, a criminal history check, and a check for outstanding warrants. He returned to the truck where Rich was fumbling through an envelope, still searching for his insurance card.

Trooper Crais then walked up to the driver's side of the pickup truck. He shined his flashlight into the open driver's side window. He noticed a travel bag on the passenger side floorboard, some clothes hanging up on the passenger side, a hat on the passenger seat, and two suitcases that were behind the seat in the extended cab portion of the pickup. He also detected the odor of fabric softener, which he knew was often used by narcotics smugglers to mask the scent of marijuana. Crais returned to where Rich was standing and again asked him how long he planned on

staying in Mesquite; this time, Rich replied that he would be there "a couple of days." When Rich handed Crais the insurance papers, Crais saw that Rich's hands were trembling so much that the papers rattled.

After taking the insurance papers, Trooper Crais returned to his patrol car to obtain the results of the license and warrant checks. The dispatcher informed him that the police computer was malfunctioning and that no checks could be run at that time. Crais returned to Rich, who asked if there was a problem. Crais told him that the computer was down, and that he had been unable to conduct a license check. After asking Rich to stand by the patrol car, Crais again approached the pickup truck and attempted to look through its back window, which was tinted. Crais was trying to determine what was underneath the two suitcases in the extended cab portion of the truck, but was unable to see through the tinting on the window. He again detected the odor of fabric softener emanating from the truck.

Trooper Crais then walked back to Rich and asked him whether he had any narcotics or weapons in the vehicle. Rich replied that he did not. Crais then asked Rich, "Can I have a look in your truck?" Rich looked at the ground while fumbling through his envelope. He did not respond. Crais repeated his question. Again Rich did not respond. For the third time, Crais asked Rich if he could look in the pickup, and then said "I either need a yes or a

no." Rich said yes, and Crais instructed him to go stand back near the patrol car.

Trooper Crais opened the driver's side door, unlocked the passenger side door with the electric lock mechanism, walked around to the passenger side door and opened it. He immediately pulled out one of the suitcases resting behind the passenger seat and opened it. The suitcase contained marijuana packed in fabric softener tissues. Crais returned the suitcase to the truck and walked back to Rich, who was standing near the patrol car; Rich said, "You got me, didn't you?" Crais replied, "Yes." He then read Rich his Miranda warnings and arrested him. Ninety-two pounds of marijuana were eventually taken from the truck. Crais's report noted the time of arrest as 11:40 p.m., so apparently no more than five minutes elapsed from the time of the initial stop until the arrest.

After indictment, Rich moved to suppress. He asserted several constitutional claims, including the violation of his Fourth Amendment right to be free from unreasonable searches and seizures. At the hearing on the motion to suppress, the district court excluded evidence of Rich's criminal history as irrelevant, and granted the motion on the grounds that the search of the suitcase exceeded the scope of the consent given by Rich. The government appeals, arguing that the district court erred in concluding that the scope of Rich's consent to search the truck did not include an unlocked suitcase that was in plain view inside the vehicle. The

-4-

government also argues that the court further erred in refusing to admit the relevant evidence of Rich's criminal history.  We now reverse the district court's decision to suppress the evidence.

II

Two distinct inquiries must be undertaken in analyzing an individual's consent to a search:  whether his consent was voluntarily given, and whether the search was within the scope of his consent.  United States v. Coburn, 876 F.2d 372, 374 (5th Cir. 1989).  Because the district court determined that the scope of the consent was exceeded, he did not rule on the voluntariness of the defendant's consent.  Thus, our review is limited to the scope of the defendant's consent.[1]

The Supreme Court has instructed us on the standard for determining the scope of consent. "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of `objective' reasonableness...." Florida v. Jimeno, ___ U.S. ___, ___, 111 S.Ct. 1801, 1803-04 (1991).  The key inquiry focuses on what the "typical reasonable person [would] have understood by the

---

[1]The government also urges us to reverse the district court's exclusion of evidence of Rich's prior criminal history from the suppression hearing.  We decline to do so, because the standard for measuring the scope of a suspect's consent is objective reasonableness; the suspect's particular knowledge about the criminal justice system based upon his prior experiences is irrelevant to such a determination.  Such knowledge could be important, however, when determining whether a suspect's consent was voluntary.  We have no doubt that the district court will address this issue when it considers the voluntariness of Rich's consent on remand.

exchange between the officer and the suspect." Jimeno, 111 S.Ct. at 1804 (citing Illinois v. Rodriquez, 497 U.S. 177, 183-84, 110 S.Ct. 2793, 2798-2802 (1990)). Objective reasonableness is a question of law that is reviewed de novo. United States v. Ibarra, 965 F.2d 1354, 1357 (5th Cir. 1992) (en banc) (7-7 decision); United States v. Harrison, 918 F.2d 469, 473 (5th Cir. 1990).

The factual circumstances surrounding the consent may be important in determining the nature of the consent and how a reasonable officer would have understood the consent. Ibarra, 965 F.2d at 1357. The trial court's factual findings must be accepted unless they are "clearly erroneous or influenced by an incorrect view of the law." United States v. Muniz-Melchor, 894 F.2d 1430, 1433-34 (5th Cir.), cert. denied, 495 U.S. 923, 110 S.Ct. 1957 (1990); United States v. Lanford, 838 F.2d 1351, 1354 (5th Cir. 1988).

III

The government does not dispute any of the district court's factual findings, but instead contests the court's conclusion as to how a reasonable person would understand the trooper's request to "look in" Rich's pickup. The government relies principally upon Florida v. Jimeno. In that case, the police officer overheard the defendant, Jimeno, arranging what seemed to be a drug transaction over a public telephone. The officer followed the defendant's car, and stopped him after he committed a traffic violation. The officer then told the defendant that he had reason to suspect that

-6-

narcotics were in the car, and requested Jimeno's permission to search the car. Jimeno consented to the search, and the officer found a kilogram of cocaine in a closed paper bag that was located on the passenger side floorboard.

Jimeno argued that the scope of his consent to search the car did not extend to the search of a closed paper bag found within the car. The Supreme Court disagreed, holding that "it was objectively reasonable for the police to conclude that the general consent to search respondent's car included consent to search containers within that car which might bear drugs." Jimeno, ___ U.S. at ___, 111 S.Ct. at 1804. The government argues that in the instant case, it was similarly reasonable for Trooper Crais to conclude that an affirmative response to his request to "look in" Rich's pickup included consent to "look in" closed containers found inside the truck.

Rich first argues that Trooper Crais's request to "have a look in" the truck was--under the objectively reasonable standard--only a request to "see inside" the vehicle. Rich argues that this interpretation is strengthened by the fact that Crais had previously attempted to "see inside" but was foiled by the truck's tinted window. Somewhat similarly, the district court based its decision to suppress the evidence in part on the failure of the officer to use the more precise term "search" in his request.

We decline the defendant's invitation to establish a list of specific terms from which an officer must select the most

appropriate for each individual situation and/or defendant. To so hamper law enforcement officials in their everyday duties would be an unjustifiable extension of the Fourth Amendment's requirement that searches be "reasonable." Several other circuits have held that a request to "look in" or "look through" a vehicle is the equivalent of a request to "search" the vehicle.[2] We take this opportunity to establish a similar rule for our own circuit: it is not necessary for an officer specifically to use the term "search" when he requests consent from an individual to search a vehicle. We hold that any words, when viewed in context, that objectively communicate to a reasonable individual that the officer is requesting permission to examine the vehicle and its contents constitute a valid search request for Fourth Amendment purposes. Thus, in the light of the factual circumstances in this case, we hold that Trooper Crais's request to "have a look in" Rich's truck effectively communicated to Rich that Crais was asking for his consent to search the vehicle. Rich had observed Crais shining his flashlight not only into the tinted window but into the open driver's side window of the truck and studying the truck's interior

---

[2]See, e.g., United States v. Espinosa, 782 F.2d 888, 892 (10th Cir. 1986) (removal of back seat and rear quarter panel of vehicle after permission was given to "look through" vehicle held to be within the scope of consent); United States v. Harris, 928 F.2d 1113, 1117 (11th Cir. 1991) (search of unlocked zippered luggage found in trunk of vehicle after permission was given to "look" in vehicle to make sure there weren't any illegal drugs, weapons, or other contraband held to be within the scope of consent).

for at least thirty seconds; thus Crais had already "seen inside" the truck and an objectively reasonable person would assume at this point that Crais was requesting permission to look further.

Rich further argues that the facts in the instant case are inapposite to those presented in Jimeno, because there the officer expressly informed the defendant that he wanted to search the car for drugs. Jimeno reaffirmed the notion that "[t]he scope of a search is generally defined by its expressed object." Jimeno, __ U.S. at ___, 111 S.Ct. at 1804 (citing United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157 (1982)). Here, Rich asserts, the general request to search his truck was unaccompanied by an express declaration of the item or items that were being sought; thus, it was not objectively reasonable for the officer to assume that Rich had consented to the search of his luggage. In other words, Rich argues that because he did not know that the officer was searching for drugs, his general consent to search the vehicle could not be interpreted as extending to any "containers within that car which might bear drugs." Jimeno, ___ U.S. at ___, 111 S.Ct. at 1804. Indeed, the district court judge decided to suppress, in part, because he concluded that Trooper Crais did not tell Rich that he wanted to search the vehicle for illegal drugs.

We do not agree with the district court. To the extent that this determination involves a factual finding on the part of the district court, we find that it is clearly erroneous. When the conversation between Crais and Rich is considered in toto, it is

indisputable that Rich knew that the object of Crais's search was illegal weapons or narcotics.  As the district court found, after the defendant handed his insurance papers to the officer, Trooper Crais asked him if he had any narcotics or weapons in the vehicle; the defendant answered "no."  The officer then asked, for the first of three times, if he could "have a look in" the defendant's truck; the defendant did not respond to this inquiry.  In the light of the fact that the entire scenario was played out in a matter of minutes--Trooper Crais's report stated that he pulled Rich over at 11:35 p.m., and that Rich was placed under arrest at 11:40 p.m.--it is unreasonable to assume a period of silence ensued that was long enough to disassociate the two sentences from each other.  The district court's factual findings reconstruct the conversation as follows:

        TROOPER CRAIS:    Do you have any narcotics or weapons in
                          your truck?
        DEFENDANT RICH:   No.
        TROOPER CRAIS:    Can I have a look in your truck?

We think that Trooper Crais's request to search the defendant's truck--certainly when taken in this context--was a request to search the truck for illegal narcotics or weapons.  Obviously the officer's concern was focused on the possibility of the presence of such contraband; his search request was similarly focused.  Again, we are unwilling to dictate to law enforcement officials the timing pattern of their conversations with suspects; if, as a result of the verbal exchange, an objectively reasonable individual would

-10-

understand the object of the officer's search, then the object of the search has been sufficiently delineated for purposes of the Fourth Amendment.  We are convinced that such delineation took place in this case.

The defendant additionally argues that Jimeno rests on the premise that "[a] suspect may of course delimit as he chooses the scope of the search to which he consents."  Jimeno, ___ U.S. at ___, 111 S.Ct. at 1804.  He argues that he cannot claim the benefit of this Jimeno rationale because he was unable to observe the search as it was being conducted; thus, he did not have the opportunity to avail himself of the right to object to or limit the search of his luggage.  He says that the search took place on the passenger side of the vehicle on the sloping shoulder of the interstate, and that he was standing (at the instruction of Trooper Crais) on the driver's side of the patrol car, which was parked several feet behind the truck.  Even if he had been able to see what Trooper Crais was doing, he argues, the search took place so rapidly that he would not have had time to object to it.

The district court made no findings that support Rich's claim that his view was too limited or that things happened too fast for him to withdraw or limit his consent.  Even if Rich was unable to see what was going on, however, we are unwilling to read Jimeno to hold, as Rich suggests, that enforcement officials must conduct all searches in plain view of the suspect, and in a manner slowly enough that he may withdraw or delimit his consent at any time

during the search.  When the court stated that "[a] suspect may of course delimit as he chooses the scope of the search to which he consents," it meant that Rich, knowing the contents of the vehicle and its various containers at the time he gave his consent, had the responsibility to limit the scope of the consent if he deemed it necessary to do so.  Rich knew what containers were in the truck when he gave his consent to search; he had the ability at that time to impose any restrictions he saw fit on the scope of that consent.  The fact that the search was not conducted in a manner that made it conducive or even possible for Rich to later withdraw or limit his consent does not automatically make that search violative of the Fourth Amendment.  Under the facts of this case, we find that the scope of Rich's consent was not violated by this lack of opportunity to limit or withdraw his consent.[3]

In suppressing the evidence, the district court additionally relied upon the officer's failure to request specifically to search the suitcase.  The Supreme Court in Jimeno, however, foreclosed the possibility of such a failure ever rising to the level of a Fourth Amendment violation.  The Court stated:

> Respondent argues, and the Florida trial court agreed with him, that if the police wish to search closed containers within a car they must separately request

---

[3]The situation where a suspect clearly withdraws or delimits his general consent to a search before an officer has begun the search, or a specific portion of the search, is not before us. We express no opinion on such a situation.  In the instant case, Rich never attempted to withdraw or delimit his consent at any point prior to or during the search.

permission to search each container. But we see no basis for adding this sort of superstructure to the Fourth Amendment's basic test of objective reasonableness. (Citation omitted.)

Jimeno, ___ U.S. at ___, 111 S.Ct. at 1804.

Thus, we find that the Supreme Court's decision in Jimeno dictates both the controlling law and its application to the facts in this case. There, the Court held that "if [a suspect's] consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization." Jimeno, ___ U.S. at ___, 111 S.Ct. at 1804. We think that under the facts of this case, it was objectively reasonable for Trooper Crais to conclude that Rich's consent to search the vehicle included his consent to search containers found within the vehicle that could hold illegal narcotics or weapons, the expressed object of Trooper Crais's search. The suitcase that Trooper Crais searched was such a container. Thus, the district court erred in holding that the scope of Rich's consent did not extend to his luggage.

IV

We therefore reverse the district court's decision granting the defendant's motion to suppress the evidence, because it was based on the erroneous determination that Rich's consent to search his vehicle did not include consent to search his luggage, which was inside the vehicle. Because the district court did not determine whether Rich's consent was voluntarily given, we must

remand this case to the district court for this primarily factual determination, and for such other proceedings that may appropriately follow.

Accordingly, the judgment of the district court is REVERSED, and the case is REMANDED for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.