**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 95-10461

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

KELLY STEWART,

Defendant-Appellant.

Appeal from the United States District Court
For the Northern District of Texas
August 19, 1996

Before KING, JONES and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge.

Kelly Stewart entered a conditional guilty plea to possession with intent to distribute methamphetamine, reserving her right to contest the district court's denial of her motion to suppress. Stewart was sentenced to serve 120 months in prison and five years supervised release. Stewart makes two complaints regarding her motion to suppress: (1) the police officer's warrantless search of a medicine bottle exceeded the scope of her consent and (2) the district court abused its discretion by denying defense counsel adequate opportunity to cross-examine the Government's only witness. Stewart also appeals her sentence because the district court did not sentence her to less than the statutory minimum sentence. We affirm.

## BACKGROUND

DEA task force Officer Gerald Beall testified that an informant notified him that a one-way ticket from Los Angeles to Tulsa through the Dallas-Fort Worth Airport was purchased that morning with cash in the name of Mrs. L. Owens. This route was a known drug flight route for the area and the informant was reliable based on numerous other reliable tips.

Beall and Officer C. A. Martin, both dressed in plain clothes, stationed themselves near the arrival gate for the Los Angeles flight. While the passengers deplaned, Beall noticed that one of them, Kelly Stewart, appeared nervous and as though she was trying to detect whether people in the area were observing her. Beall stated that Stewart exhibited the characteristics of a drug courier because she paused and observed the people in the area after she deplaned. The officers did not approach Stewart at that time but waited until Stewart entered the boarding area for the connecting flight to Tulsa.

Beall and Martin approached Stewart, identified themselves as law enforcement officials and asked if they could speak with her. Stewart agreed and showed Beall her airline ticket. It was a one-way ticket from Los Angeles to Tulsa and had been purchased with cash that morning in the name of Mrs. L. Owens. Beall then asked Stewart if she was Mrs. Owens. Stewart replied that she was and Beall asked to see some identification. Stewart handed Beall her driver's license and stated that her name was Kelly. The license was an Oklahoma license, the picture on the license was Stewart's,

and the name on the license was Kelly Stewart. Beall testified that during this conversation, Stewart appeared extremely nervous and was trying to push her jacket under her chair.

Beall then asked Stewart whether she was carrying any illegal drugs or a large amount of U.S. currency. Stewart replied that she was carrying prescription medication. Beall and Stewart dispute what happened next. Beall testified that Stewart produced a plastic, amber medicine bottle from her purse and held it up for Beall to see. Beall asked to look at the bottle, and Stewart handed it to him. Stewart testified that Beall asked to look at the bottle but that while she was looking for the bottle in her purse, Beall told her that he would get it. He then took the purse from Stewart and retrieved the bottle. In any event, both agree that Beall asked to look at the bottle and Stewart consented. Beall then opened the bottle, looked inside, and observed light blue pills and a ziplock bag containing "an off white, cornmealish type powdery substance" that Beall suspected was a controlled substance.

Beall placed Stewart under arrest. As the officers were escorting Stewart to the DEA task force office, Beall picked up Stewart's jacket and noticed that it was unusually heavy on one side. He felt two bundles from the outside of the jacket. Beall asked Stewart, "What's this?" Stewart replied, "more stuff." Beall gave Stewart her *Miranda* warnings after they reached the task force office. Beall retrieved the two bundles from the lining of Stewart's jacket. Each bundle contained a ziplock bag holding a

3

substance similar to the substance in the original ziplock bag. The substance from all three bags tested positive for methamphetamine and weighed a total of 1,339.5 grams.

Stewart was indicted for and pled not guilty to possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1). Stewart moved to suppress all statements, evidence and contraband obtained or confiscated because she was stopped without reasonable suspicion, searched without probable cause or consent, and questioned without <u>Miranda</u> warnings. After a hearing the motion was denied. Stewart changed her plea to guilty, was sentenced and now appeals.

## I. Does At Mean In?

Stewart argues that she gave Officer Beall consent to look at the medicine bottle but not in the medicine bottle. Therefore, his look inside of the bottle was beyond the scope of her consent and constitutes an unlawful search. We disagree.

Stewart does not challenge the voluntariness of the consent. Therefore, we consider only whether Officer Beall's conduct in looking inside the medicine bottle exceeded the scope of the consent. <u>United States v. Rich</u>, 992 F.2d 502, 505 (5th Cir.), <u>cert. denied</u>, 502 U.S. 933 (1993).

The standard for measuring the scope of the suspect's consent is objective reasonableness. <u>Id.</u> at 505. Recitation of magic words is unnecessary; the key inquiry focuses on what the typical reasonable person would have understood by the exchange between the officer and the suspect. <u>Id.</u> at 505-506. The scope of a search is

4

generally defined by its expressed object.  <u>Florida v. Jimeno</u>, 500 U.S. 248, 251 (1991); <u>Rich</u>, 992 F.2d at 506.

In <u>Rich</u>, a police officer asked the driver of a truck if he was carrying any narcotics or weapons in the truck.  After the driver said no, the officer asked to "have a look in" the truck to which the driver consented.  The officer unlocked the truck, looked inside and opened a suitcase that he found in the truck.  The officer discovered marijuana in the suitcase and arrested the driver.  The Court held that the suitcase search was not beyond the scope of the driver's consent and that "any words, when viewed in context, that objectively communicate to a reasonable individual that the officer is requesting permission to examine the vehicle and its contents constitute a valid search request for Fourth Amendment purposes."  <u>Rich</u>, 992 F.2d at 506.

Objective reasonableness is a question of law reviewed <u>de novo</u>.  <u>Rich</u>, 992 F.2d at 505; <u>United States v. Ibarra</u>, 965 F.2d 1354, 1357 (5th Cir. 1992)(en banc)(7-7 decision). Factual circumstances surrounding the consent may be important in determining the nature of the consent and how a reasonable officer would have understood that consent.  <u>Rich</u>, 992 F.2d at 505.

Beall was caught traveling under an assumed name and was nervous when speaking to the officers.  Stewart knew Beall's purpose because he asked Stewart if she was carrying any illegal drugs or weapons before asking to look at the bottle.  This question establishes the object of the search.  <u>See</u> <u>Rich</u> at 507. Because Stewart knew her deception was uncovered and that Beall was

5

looking for illegal drugs, it is objectively reasonable to expect Beall to look in the bottle after being granted permission to look at the bottle.  The search was within the scope of Stewart's consent.

## II.  Limitation of Cross-Examination of Government Witness.

Stewart argues that the district court abused its discretion when it limited her examination of the Government's only witness, Officer Beall, at her suppression hearing.  Defense counsel questioned Beall on cross-examination during the Government's case-in-chief and on direct examination during her own case-in-chief.

The Confrontation Clause of the Sixth Amendment protects a defendant's right to conduct cross-examination.  <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39, 51 (1987).[1]  A trial court is given wide latitude in imposing reasonable restraints upon a defendant's right to cross-examination.  <u>United States v. Alexius</u>, 76 F.3d 642 (5th Cir. 1996).  We review the trial court's restriction of the scope of cross-examination for abuse of discretion.  <u>Id.</u> at 644.

---

[1]We recognize that the right to cross-examine is a trial right designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination.  <u>Ritchie</u>, 480 U.S. at 52.  However, we safeguard the right to cross-examine at the suppression hearing because the aims and interests involved in a suppression hearing are just as pressing as those in the actual trial.  *See*, <u>United States v. De Los Santos</u>, 810 F.2d 1326 (5th Cir.), *clarified on reh'g*, 819 F.2d 94 (5th Cir.), *cert. denied*, 484 U.S. 978 (1987)(discussing a defendant's right to public trial as applied to a suppression hearing).  While the pre-trial nature of the hearing is a consideration in some judicial inquiries determining rights of confrontation, compromise of confrontation clause protections before trial seems to be allowed only when a defendant is given a full opportunity to cross-examine adverse witnesses.  *See* <u>United States v. De Los Santos</u>, 819 F.2d 94 (5th Cir. 1987)(on reh'g).

At the suppression hearing, the Government called Officer Beall as its only witness. On cross-examination and on direct examination during Appellant's case-in-chief, the district court prevented defense counsel from asking any questions prefaced by a reference to earlier testimony, and mistakenly considered questions repetitious which were not.

(on cross-examination)
Q.[2]  If I understand your testimony correctly, you said--

    C.    Let's don't rehash his testimony. Just ask him questions about things he hasn't already told you about.

Q.    Well, Judge I'm going to ask him about--

    C.    Don't ask him to repeat his testimony.

Q.    Yes, sir. Did you ask my client to look in the bottle or look at the bottle?

A.    I asked for permission to look at the bottle.

Q.    So you looked at, not in.

    C.    And if you repeat the same question twice, I'm going to assume you've run out of good questions to ask and your questioning will be terminated. You may proceed.

Q.    Officer, can you answer my question.

    C.    He's answered your question. You may proceed.

Q.    Your honor, I didn't hear his answer.

    C.    You may proceed to a new question.

                          *    *    *
(11 questions later)
Q.    Exactly what information did they [informant] give you regarding Ms. Kelly Stewart?

A.    The only information that was given to me was that a female

---

[2]Statements introduced by "Q." are statements by defense counsel. Those introduced by "C." are statements by the court. Those introduced by "A." are by the witness.

7

had purchased a cash, one-way ticket from Los Angeles to Tulsa with a stop at Dallas/Fort Worth Airport. And that the female had purchased the ticket under the name of Mrs. L. Owens.

Q. So the informant did not give you a physical description.

C. Have you told him everything the informant told you?

A. Yes, Sir.

C. You may to on to another subject now.

Q. Your honor, If I might ---

C. You might go on to another subject. He's already told you what the informant told him

Q. Your Honor, reasonable suspicion is what he has to have to detain my client.

C. You may go on to another subject. He's told you what the informant told him.

Q. The informant gave you no description.

C. Pardon me. Are you through with your examination?

Q. No, Your Honor.

C. You're going to be through with it real fast if you don't move on to another question.

Q. Your Honor, I believe I have the right--

C. You may move on to another question. I don't want any back talk or argument with me. Go on to another question.

Q. Your Honor, would the Court show my objection, and I would like to ask another question in that area.

C. No, you cannot ask another question on the subject he's already answered.

Q. Could you show my objection for the record.

C. Would you please proceed. We're wasting enough time with your conduct. Please proceed.

* * *

(2 questions later)

8

Q. When you were at the gate area, what exactly were you looking for?

A. We didn't know.

Q. So you had no idea what you were looking for?

A. I had not received that information at the time we got to the gate.

Q. So it would be your testimony you were looking for -- just watching people?

C. Okay. You're through with your examination of this witness. I've warned you every way I can warn you [sic] we're not going to play games and continue to ask the same question two or three different ways. You may be seated.

* * *

(on direct examination)
Q. Officer, when you testified earlier that she --

C. Let's don't go over what he's testified to earlier. I have everything he said. Let's go on to new subjects, new questions. It doesn't have to be a new subject. Something that hasn't been asked before, and certainly don't ask him to repeat what he's already said.

Q. You testified that she was nervous when she got off the plane

C. Okay. You may be seated.

The district court prevented defense counsel from clarifying earlier testimony and putting his questions in the context of prior testimony. We realize that defense counsel could have reworded the questions in such a way as to avoid specific referral to prior testimony, but we will not enforce a requirement to do so under these facts. Here, the district court's restriction was so severe and so swift that it amounts to an abuse of discretion.

Confrontation Clause errors are subject to harmless-error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 682 (1986). "The

9

correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." Id. at 684.[3] Factors to consider are the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case. Id.

Officer Beall was the Government's only witness making his testimony crucial to the prosecution's case. There was no corroborating evidence but Stewart did not materially dispute his testimony. On appeal, Stewart does not articulate specific prejudice suffered. However, in a motion for reconsideration, Stewart submitted 24 questions she would have asked Officer Beall at the hearing. While many of the questions were repetitive, Stewart would have asked about reasonable suspicion for the stop. Particularly, Stewart would have asked Officer Beall details regarding his determination that Stewart was nervous, one of Officer Beall's bases for reasonable suspicion. Absent a complete recantation by Officer Beall, the questions would not have altered the result of the hearing.

Officer Beall testified on direct that Stewart paused and

---

[3]Van Arsdall addresses the standard to be applied when the error occurs at trial. We do not decide whether the "beyond a reasonable doubt" standard must be applied to suppression hearing errors because the errors in this case are harmless beyond a reasonable doubt.

10

looked around the area as if she was trying to determine whether she was being watched. This explanation satisfies Stewart's inquiries. Additionally, Officer Beall articulated several other bases for reasonable suspicion which, even absent nervousness, are sufficient: (1) a tip from a reliable informant, (2) Stewart's arrival on the flight from Los Angeles, a known drug flight, and preparation to board the connecting flight to Tulsa, which was consistent with the tip, (3) Stewart was carrying several large purses and a cloak-type cape, and (4) Stewart's ticket was purchased under a different name, which was also consistent with the tip. Officer Beall's articulated reasons are sufficient to find reasonable suspicion. *See*, <u>United States v. Simmons</u>, 918 F.2d 476 (5th Cir. 1990) and <u>United States v. Gonzales</u>, 842 F.2d 748 (5th Cir. 1988), *overruled on other grounds*, <u>United States v. Hurtado</u>, 905 F.2d 74 (5th Cir. 1990). The limitation of Stewart's cross-examination was harmless error.

**III.  Entitlement to Safety-Valve Departure**

Stewart argues that she is entitled to a sentence less than the statutory minimum sentence under § 5C1.2 of the United States Sentencing Guidelines, sometimes referred to as the safety-valve amendment. Section 5C1.2 and 18 U.S.C. § 3553(f) provide that a defendant may receive less than a statutory minimum sentence if the defendant's guideline imprisonment range falls below the statutory minimum[4] and the defendant meets five criteria. The district court

---

[4]  Under the Guidelines, Stewart would have been sentenced within a range of 87 - 102 months imprisonment. The statutory minimum sentence for possession with intent to distribution 1.3

11

found that Stewart did not meet the fifth criteria and she challenges the requirement as unconstitutional as applied in this case.

U.S.S.G. § 5C1.2(5) states in pertinent part:

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence that the defendant has concerning the offense or the offenses that were part of the same course of conduct or of a common scheme or plan . . .

Stewart's request for a sentence under § 5C1.2 was denied a because she did not identify the other participants in the methamphetamine operations.

Stewart argues, without authority, that § 5C1.2(5) is unconstitutional as applied because it subjects her to cruel and unusual punishment and involuntary servitude. To meet the requirement, she argues she must subject herself and her family to violent retaliation by the people she is required to identify and forces her to work as an informant for the Government. The claim lacks merit.

While this Circuit has not before addressed these challenges to § 5C1.2, we have addressed similar challenges to § 3E1.1 which allows a reduction in a defendant's offense level for acceptance of responsibility. In United States v. White, 869 F.2d 822 (5th Cir.), *cert. denied*, 490 U.S. 1112 *and cert. denied sub nom.* Chambless v. United States, 493 U.S. 1001 (1989), the defendant challenged the constitutionality of U.S.S.G. § 3E1.1 because it

_____

kilograms of methamphetamine is 120 months, the term to which Stewart was sentenced.

12

encourages defendants to forego a jury trial in return for a lesser sentence. The court answered, "[t]he fact that a more lenient sentence is imposed on a contrite defendant does not establish a corollary that those who elect to stand trial are penalized." White, 869 F.2d at 826.

This position was strengthened in United States v. Mourning, 914 F.2d 699 (5th Cir. 1990)(statutorily overruled in part on other grounds) in our response to another challenge to § 3E1.1. In Mourning, the defendant was denied an acceptance of responsibility decrease in his offense level because he did not accept responsibility for relevant conduct. The Court ruled that a defendant must accept responsibility for all relevant conduct and that § 3E1.1 was not unconstitutional.

> 'To hold the acceptance of responsibility provision unconstitutional would be to say that defendants who express genuine remorse for their actions can never be rewarded at sentencing' . . . [S]hould the defendant choose not to accept responsibility for all of his relevant criminal conduct, nothing happens. No increase in punishment occurs. The previously calculated guideline range remains constant. . . To the extent the defendant wishes to avail himself of this provision, any dilemma he faces in assessing his criminal conduct is one of his own making.

Mourning, 914 F.2d at 707 (quoting Roberts v. United States, 445 U.S. 552 (1980)).

The same reasoning applies to Stewart's challenge to § 5C1.2. The fact that a more lenient sentence is imposed on a defendant who gives authorities all of the information possessed by the defendant does not compel that defendant to risk his or his family's lives nor does it compel a defendant to work for the Government. Stewart

can refuse the option and receive the statutory sentence under the regular sentencing scheme.

AFFIRMED.