UNITED STATES of America,

v.

Jose Luis MARQUEZ, Defendant.

No. 96 CR 161 (SAS).

United States District Court,
S.D. New York.

Aug. 23, 1996.

Christine Chung, Assistant U.S. Attorney, United States Attorney's Office, Southern District of New York, New York City, for United States of America.

Roland Thau, The Legal Aid Society, Federal Defender Division, New York City, for Defendant.

## MEMORANDUM AND ORDER

SCHEINDLIN, District Judge.

Defendant Jose Luis Marquez ("Marquez") moves to suppress physical evidence (heroin and cocaine) and post-arrest statements pursuant to Rule 12 of the Federal Rules of Criminal Procedure. The Court held an evidentiary hearing on July 12, 1996. Both the Government and the Defendant filed post-hearing briefs on July 31, 1996; reply briefs were served on August 16, 1996. For the reasons set forth below, the motion to suppress is denied.

## I. FACTUAL BACKGROUND

On November 10, 1995, Marquez was at Penn Station in order to travel to Vermont after visiting friends and/or family in New York. Two Amtrak plain clothes police officers, Jay Cody and Stephen Steinecke, watched Marquez purchase his ticket. They believed that he became aware of their surveillance while in the ticket line because he glanced repeatedly in their direction as he walked away from the ticket window. Tr.

18–19.[1] They then watched as he sat in the concourse eating some food. Tr. 19. When Marquez' train was announced, the officers believed that he hesitated to join the ticket holders' line on the train platform. Tr. 21–22. Finally, the officers believed that Marquez spotted them again and therefore deliberately changed his position in line. Tr. 22–23. Marquez' only luggage was a backpack. Tr. 18.

The officers then approached Marquez, identified themselves and asked to speak to him. He agreed. Tr. 23–24. Marquez first told the officers he had been in New York for a couple of days visiting friends but later told them he had been in New York for six days visiting his grandfather. Tr. 26. At this point, the officers explained that they were looking for illegal narcotics and asked if they could "look in" his bag. Marquez again agreed. Tr. 27, 121. The officers proceeded to "search" or "look through" the backpack. Tr. 30–31; 122. Approximately 25 grams of heroin and 7 grams of cocaine were seized from a paper bag found within the backpack. See Gov't Ex. 2. Marquez was then arrested. After being advised of his *Miranda* rights, Marquez told the officers that he had paid $500 for the bag of heroin, which he had purchased from a friend. Tr. 36–38.

## II. DEFENDANT'S CLAIMS

Marquez asserts that his consent to the search of his backpack was involuntary because it was "coerced by intimidation." Marquez also claims that his initial encounter with the officers was improper because they impermissibly relied on race and ethnicity as factors in their determination to approach him.[2] He further claims that the scope of his

---

1. Citations in this form refer to the transcript of the July 12, 1996 suppression hearing.

2. Defense counsel argues that Marquez was prevented from fully presenting this issue at the evidentiary hearing or in post-hearing briefing because of the Court's earlier ruling that he was not entitled to discover certain materials he had sought in support of this claim. He explicitly reserved his right to appeal this discovery ruling. Because the Defendant consented to speak with the officers, the reasons for the initial approach are no longer relevant. See *United States v. Hooper*, 935 F.2d 484, 489–90 (2d Cir.), *cert. denied*, 502 U.S. 1015, 112 S.Ct. 663, 116

L.Ed.2d 754 (1991) (under Fourth Amendment, unnecessary for law enforcement officers to justify encounter to which defendant consents). Moreover, because the initial encounter involved no "seizure," no constitutional right could have been infringed and suppression of evidence is not an available remedy for any complaint regarding the initial approach. See *Florida v. Royer*, 460 U.S. 491, 497–98, 103 S.Ct. 1319, 1323–24, 75 L.Ed.2d 229 (1983) (where no seizure within meaning of Fourth Amendment occurs because questioning is consensual, no constitutional right is infringed).

consent was limited, only allowing the officers to "look in" (gaze into) the bag, but not permitting them to search through objects found within the backpack.

## III. *DISCUSSION*

### A. *Voluntariness of Consent*

■ In order to determine whether a consent to search is voluntary, the Court must assess the "totality of all the surrounding circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973). Marquez claims that he was "coerced by intimidation." When asked at the hearing why he felt intimidated, Marquez testified only that he feared the prospect of going to jail for drug possession, and that he understood that the officers were "cops" who possessed guns. Tr. 163. Marquez also stated that he believed the officers would search his bag whether he consented or not. Tr. 161.

On the other hand, Marquez did not describe any particular action taken by either officer which intimidated him. The officers approached Marquez in mid-morning on an open train platform among passengers who were boarding the same train Marquez intended to board. Tr. 24–26. The officers had no physical contact with Marquez and never displayed their weapons. Tr. 123, 166. There is no testimony that either officer raised his voice or threatened Marquez verbally or physically. Finally, Marquez' knowledge that he was speaking to police officers does not, in itself, vitiate his consent. *Cf. United States v. Mire*, 51 F.3d 349, 352–53 (2d Cir.1995) ("mere presence" of officers in a police office did not establish coercive detention, where officers neither prevented defendant from leaving nor displayed weapons).

The evidence in the record compels a finding that Marquez' consent was not coerced but rather was voluntarily given. The Second Circuit has upheld the voluntariness of searches in circumstances that might raise a legitimate question of coercion. *See, e.g., United States v. Garcia*, 56 F.3d 418, 423 (2d Cir.1995) (consent to search found despite formal arrest and presence of officers threatening to obtain search warrant if consent

withheld); *United States v. Ceballos*, 812 F.2d 42, 51 (2d Cir.1987) (consent to search voluntary when defendant was removed from workplace in handcuffs, interrogated at Secret Service field office and warned of disruption that would result from court-ordered search). Unlike these cases, where consents were upheld, there are no circumstances in this case even hinting at coercion. Accordingly, I find that Marquez consented to the search of his bag.

### B. *Scope of Consent*

■ Marquez argues that his consent did not permit the officers to search the backpack and its contents. It is now well settled that the scope of consent is that of " 'objective' reasonableness," namely what the "typical reasonable person [would] have understood by the exchange between the officer and the suspect." *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991). Defendant's argument is semantic, creative, and, I suspect, based on hindsight. Defendant now argues that the officers asked if they could "look in" his bag. In agreeing that they could, he did not mean that they could *search* his bag, but only that they could "gaze into" his bag. Under the circumstances, it was objectively reasonable for the officers to conclude that they were given permission to search the bag, including its contents.

■ Determining objective reasonableness is a question of law. But the determination is based on the facts. Here, there is no real dispute concerning the facts. The officers testified that they told the defendant they were looking for narcotics. Tr. 27, 121. Defendant did not dispute this testimony. Defendant and the government agree that the officers asked to "look in" the bag as opposed to "look through" the bag or "search" the bag. Tr. 17, 121, 160. Finally, there is no evidence that the defendant ever asked the officers to stop "searching" his bag once they had begun to do so.

■ Defendant believes that the choice of words is critical. He argues that Amtrak has developed a nationwide script urging its officers to use the phrase "look in" rather than "search" because these words will mis-

lead the suspect into believing that the officers will not, in fact, search the bag. I cannot agree. Despite the dictionary definitions quoted by defendant in his post-hearing memorandum, I believe that it is objectively reasonable for an officer to conclude that permission to "look in" something is the same as permission to "search." Several courts have so held. *See, e.g., United States v. Rich,* 992 F.2d 502, 506 (5th Cir.), *cert. denied,* 510 U.S. 933, 114 S.Ct. 348, 126 L.Ed.2d 312 (1993) ("Several other circuits [in addition to this one] have held that a request to 'look in' or 'look through' a vehicle is the equivalent of a request to 'search the vehicle.' "); *United States v. Harris,* 928 F.2d 1113, 1117 (11th Cir.1991) (upholding search of luggage found in trunk after permission was given to 'look in' vehicle).

 This precise issue was addressed by the Fifth Circuit in *Rich.* While this Court is not bound by the decision of a different circuit, this case provides persuasive reasoning, which I hereby adopt.

> We decline the defendant's invitation to establish a list of specific terms from which an officer must select the most appropriate for each individual situation and/or defendant. To so hamper law enforcement officials in their everyday duties would be an unjustifiable extension of the Fourth Amendment's requirement that searches be 'reasonable.' ... We take this opportunity to establish a similar rule for our circuit: it is not necessary for an officer specifically to use the term 'search' when he requests consent from an individual to search a vehicle. We hold that any words, when viewed in context, that objectively communicate to a reasonable individual that the officer is requesting permission to examine the vehicle and its contents constitute a valid search request for Fourth Amendment purposes.

992 F.2d at 506.

Under the circumstances of this case, the officers' request to look in the bag effectively communicated to Marquez that they were asking for his consent to search the backpack. The Supreme Court has held that "[t]he scope of a search is generally defined by its expressed object." *Jimeno,* 500 U.S. at 251, 111 S.Ct. at 1803. Marquez knew that the officers were looking for narcotics. No one could reasonably conclude that the drugs would be visible upon a gaze into the bag. Experience teaches that most of those who traffic in narcotics make some attempt to conceal the contraband. Thus a mere "look" or "gaze" into the backpack would never suffice. *Cf. Mire,* 51 F.3d at 351–53 (officers who were told they could "take a look" (351) in the bag reasonably understood consent to include a search of the soles of the sneakers contained in the bag). *See also United States v. Snow,* 44 F.3d 133, 135 (2d Cir.1995) ("If the consent to search is entirely open-ended, a reasonable person would have no cause to believe that the search will be limited in some way."); *United States v. Springs,* 936 F.2d 1330, 1334 (D.C.Cir.1991) (where defendant knew that officer was looking for narcotics but placed no restriction on consent to search, officer reasonably searched baby powder contained in baggage). Marquez' failure to offer any protest provides further proof that he understood the nature of the request and that he assented to it.

## IV. CONCLUSION

For the reasons set forth above, the motion to suppress is denied. A status conference is set for August 28 at 1:00 p.m.

SO ORDERED.