Filed 6/7/16  P. v. Smith CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ANTHONY MICHAEL SMITH,<br><br>Defendant and Appellant. | C076766<br><br>(Super. Ct. Nos.<br>CRF 13-1161, CRF 13-2636,<br>CRF 14-0020) |

In a global settlement of three cases, defendant Anthony Michael Smith pleaded guilty and no contest to multiple counts, including receipt of a stolen vehicle.  (Pen. Code, § 496d, subd. (a).)  On appeal, defendant challenges the trial court's denial of his motion to suppress evidence regarding the stolen vehicle.  We affirm.

### BACKGROUND

We discuss only the facts pertinent to defendant's appeal.

Two patrol officers visited a house after receiving an anonymous tip:  defendant had stolen a pickup truck and was storing it there.  At the house, the officers spoke with a

1

tenant, who was renting a room. She told the officers defendant (also a tenant) and the homeowner lived there but were out.

The officers said they were investigating a tip of a stolen truck in the backyard. The officers asked the tenant if there was a pickup truck in the backyard. She said there was a truck in the backyard, but she did not know who it belonged to. She stated that defendant had been working on the truck. After confirming the tenant had access to the backyard, the officers asked permission to "go in the backyard to look at the truck." The tenant agreed.

In the backyard, the officers saw a red, four-door Chevrolet pickup truck. Many parts had been stripped: it was missing license plates, bumpers, the hood, the front fenders, and the dash. Part of the engine was also stripped out. One of the back doors was open, letting the officers see that an inside door panel was also missing.

The top of the truck was covered with a blanket obscuring the front windshield and front door windows. The officers lifted the blanket off the front windshield to read the vehicle identification number (VIN). With the VIN, the officers confirmed the truck was stolen. While the officers were in the backyard, the tenant stood near the back sliding glass door.

Defendant moved to suppress the evidence seized. At the hearing, one of the officers was cross-examined regarding getting permission for the search:

"Q. So after you—after [the tenant] told you she lived there what did you ask her about searching?

"A. I didn't ask her about searching. I asked her if I could access the backyard to look at the pickup truck."

The trial court denied the motion to suppress finding the officers had consent to be in the backyard; defendant had no reasonable expectation that someone would not flip up the blanket to check the VIN; and defendant lacked standing to challenge the search of the stolen vehicle's VIN.

2

DISCUSSION

Defendant contends that lifting the blanket constituted an unlawful search because the officers lacked consent and probable cause. He suggests the officers only had consent to enter the backyard—not to search. He points to the officer's testimony at the suppression hearing: the officer asked to " 'go in the backyard to look at the truck' " and clarified that he " 'didn't ask [the tenant] about searching.' " Defendant thus concludes lifting the blanket was an unauthorized search for lack of consent and probable cause. We disagree.

*A. Applicable Law*

Consent to a warrantless search may come from a third party with " 'common authority over or other sufficient relationship to the premises or effects sought to be inspected.' " (*People v. Jenkins* (2000) 22 Cal.4th 900, 977 (*Jenkins*).) When the state relies on a third party occupant's consent, two questions are raised: (1) did the third party have authority to consent to the search, and (2) did the scope of consent include the object or container searched. (See *id*. at p. 974.) The state carries its burden by showing it was objectively reasonable for the officers to believe the third party had authority to consent and the consent's scope encompassed the item searched. (*Ibid*.)

Co-inhabitants may permit a common area to be searched, and a defendant who leaves an object in an area of common use or control assumes the risk of a third party consenting to its search. (*People v. Clark* (1993) 5 Cal.4th 950, 979 (*Clark*), disapproved on other grounds by *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

The scope of consent is generally defined by its expressed object. (*Florida v. Jimeno* (1991) 500 U.S. 248, 251 [114 L.Ed.2d 297, 303].) The scope is measured by objective reasonableness: "what would the typical reasonable person have understood by the exchange between the officer and the suspect." (*Ibid*.) The scope of consent may include objects left in an area of common use or control. (*Jenkins, supra,* 22 Cal.4th at p. 979.)

3

On appeal, we review the trial court's denial of a motion to suppress in the light most favorable to the ruling, deferring to express or implied findings of fact supported by substantial evidence. (*Jenkins, supra,* 22 Cal.4th at p. 969.) But we independently review the trial court's application of the law to the facts. (*Ibid.*) "We may sustain the trial court's decision without embracing its reasoning." (*People v. McDonald* (2006) 137 Cal.App.4th 521, 529, italics omitted.)

### B.    Application

Here, it was objectively reasonable for the officers to believe that the tenant had authority to consent to the search and that lifting the blanket to view the VIN was within the scope of that consent.

The tenant had authority to consent to the search. She told the officers she had access to the backyard. Though she did not own the truck, she could consent to its search. When the officers told her that they suspected a stolen truck was in her backyard, the tenant could reasonably consent to its search to exonerate herself. (See *Jenkins, supra,* 22 Cal.4th at p. 979 [noting police could reasonably accede to a home occupant's request to search luggage under the occupant's control but belonging to another in order to exonerate the occupant or protect her from a hazard].)

Moreover, by leaving the truck in a common area, with no manifestation of privacy (it was unlocked, only partially covered, and one door was open) defendant assumed the risk of a third party with common access consenting to its search. (See *Clark, supra,* 5 Cal.4th at p. 979 [by leaving his clothes readily displayed on the car seat, the defendant assumed the risk that the car's owner would consent to a search of the car and its contents]; *Jenkins, supra,* 22 Cal.4th at p. 978 [by asking his sister to secure his briefcase, the defendant assumed the risk the sister would consent to a search of the briefcase]; *Frazier v. Cupp* (1969) 394 U.S. 731, 740 [22 L.Ed.2d 684, 693-694] [by allowing his cousin to use a bag and in leaving it in his house, the defendant assumed the risk that his cousin would allow someone else to look inside].)

4

Additionally, lifting the blanket was within the scope of consent. The officers told the tenant they were investigating a tip of a stolen truck in the backyard. They then asked permission to go into the backyard to look at the truck. With their stated objective of investigating a stolen truck, permission to "look at" the truck reasonably encompassed moving a blanket obscuring the VIN. (See *Florida v. Jimeno, supra,* 500 U.S. at p. 251 [search based on suspicion that drugs were in the car reasonable encompassed searching containers in the car that might contain drugs].)

Though the officer did not use the word "search," that did not preclude the officers from lifting the blanket. (See *People v. Carvajal* (1988) 202 Cal.App.3d 487, 494-495 [consent to " 'look in the back of [the] pickup truck where the boxes were at' " included searching all containers in the back of the truck]; *U.S. v. Stewart* (5th Cir.1996) 93 F.3d 189, 192 [consent to "look at" medicine bottle included consent to examine contents].) A reasonable person would not interpret the exchange between the tenant and the officers as limiting consent to the officers' mere presence in the backyard.

Accordingly, it was objectively reasonable for the officers to believe the tenant had authority to consent and that the scope of consent encompassed lifting the blanket to view the VIN.

Defendant, however, cites *Arizona v. Hicks* (1987) 480 U.S. 321 [94 L.Ed.2d 347] (*Hicks*) to argue that lifting the blanket was unlawful for lack of probable cause. We are not persuaded. In *Hicks,* police entered the defendant's apartment after bullets were fired from that apartment to the apartment below. (*Id.* at p. 323.) While searching for whomever fired the gun and the gun, an officer noticed expensive stereo components in the otherwise squalid apartment. (*Ibid.*) Suspecting they were stolen, he recorded their serial numbers—moving some components to do so. (*Id.* at p. 324.) The Supreme Court held that moving the equipment was a search. (*Id.* at p. 324.) Without probable cause, the plain view doctrine did not authorize the search. (*Id.* at p. 326.) The court held the search unlawful as the government had conceded the absence of probable cause. (*Id.* at

5

pp. 326, 329; cf. *id*. at p. 331 (dis. opn. of Powell, J.) [noting it was unwise to concede the absence of probable cause].)

*Hicks*, however, is distinguishable. Searching the stereo was unrelated to the objectives of the authorized intrusion: searching for the gunman and a gun. But here the purpose of the intrusion was to determine if the truck was stolen. (See *Clark, supra,* 5 Cal.4th at p. 980 [distinguishing *Hicks* where third party car owner consented to the search a of car containing the defendant's incriminating clothing].)

*Hicks* does not apply for another reason. The officers had probable cause to seek the truck's VIN. An anonymous tip informed the officers defendant had a stolen truck in a backyard—the tip named defendant and the address where the stolen truck was located. The tip was corroborated by the tenant who told the officers defendant lived there and had been working on a truck in the backyard. It was further corroborated when the officers found a truck in the backyard, sitting in the grass, partially dismantled. The totality of the circumstance established probable cause for the officers to believe the truck was stolen. (See *Hicks, supra,* 480 U.S. at pp. 326, 331 [noting plain view would have sustained the stereo's seizure if there were probable cause to believe it was stolen].) Thus, *Hicks* neither applies nor alters our conclusion.

DISPOSITION

The judgment is affirmed.

NICHOLSON____, Acting P. J.

We concur:

____HULL_____, J.

____DUARTE_____, J.

6