UNITED STATES of America,
Plaintiff–Appellee,

v.

Daryl GANT (originally indicted as Daryl Grant), Defendant–Appellant.

No. 96–5014.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 11, 1996.

Decided April 23, 1997.

Timothy R. DiScenza, Asst. U.S. Attorney (briefed), Paul M. O'Brien (argued), Office of the U.S. Attorney, Memphis, TN, for Plaintiff-Appellee.

Stephen B. Shankman (argued), Joseph T. Townsend (briefed), Office of the Federal Public Defender for the Western District of Tennessee, Memphis, TN, for Defendant-Appellant.

Before: BOGGS, NORRIS, and GIBSON, Circuit Judges.*

ALAN E. NORRIS, Circuit Judge.

Defendant appeals an order denying his motion to suppress evidence of drugs found in a tote bag belonging to him, arguing that the removal of the bag from an overhead compartment above his seat on a Greyhound bus constituted an unreasonable search and seizure in violation of the Fourth Amendment, and that the subsequent search of the bag exceeded the scope of his consent to search. We affirm.

## I.

Defendant was a passenger on a Greyhound bus that arrived in Memphis, Tennessee, on the evening of July 26, 1994. Officer Frank Bell of the Organized Crime Unit of the Memphis Police Department conducted a "sweep" of the bus for narcotics. After all of the passengers exited the bus, the sweep was conducted by removing their bags from the overhead compartment and placing them on the seats below. A drug-sniffing dog then examined the bags. The dog alerted to two of the bags, indicating that they might contain drugs. Prior to the sweep, these two bags had been located next to each other in the overhead compartment directly above defendant's seat.

All of the bags were then placed back in the overhead compartment, and the passengers were allowed to return to the bus. Officer Bell inquired about the ownership of the two bags to which the dog had alerted. Defendant indicated that one of the bags, a black bag, was his, but he disclaimed ownership of the other bag, a maroon bag. No other passenger claimed ownership of the maroon bag.

Bell then removed the unclaimed maroon bag from the bus and examined its contents. He found, among other items, a box of Tide detergent. Upon opening the box of Tide, he discovered that it contained cocaine.

Bell returned to the bus and asked defendant if he could "look" in the black bag. Defendant stated that the officer could do so if defendant was permitted to open the bag himself. When defendant opened the bag, Bell observed some clothing and a box of Tide like the one contained in the maroon bag. Bell opened the box of Tide and discovered that it too contained cocaine.

Following an indictment for possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841, defendant sought to suppress the evidence of the drugs in the black bag, arguing that the removal of his bag from the overhead compartment violated his Fourth Amendment rights, and that the opening of the Tide box exceeded the scope of his consent for Bell to look in his bag. The district court denied the motion to suppress, holding that the removal of the bag

---

* The Honorable John R. Gibson, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

from the overhead compartment was neither a search nor a seizure, that defendant's Fourth Amendment rights were therefore not implicated, and that defendant's consent for Bell to look in the bag extended to containers found inside of the bag, including the Tide box. Defendant then entered a conditional guilty plea, preserving his right to appeal these holdings.

## II.

■ When this court reviews the ruling of a district court on a motion to suppress evidence, it reviews the district court's findings of fact for clear error and its conclusions of law de novo. *United States v. Duncan,* 918 F.2d 647, 650 (6th Cir.1990).

■ The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In defining the terms "search" and "seizure," the United States Supreme Court has stated that

[a] "search" occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A "seizure" of property occurs when there is some meaningful interference with an individual's possessory interests in that property.

*United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). The district court in this case concluded that the removal of defendant's bag from the overhead compartment for examination by a drug-sniffing dog constituted neither a search nor a seizure.

In ruling that no search occurred, the district court relied upon *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). In *Place,* the Supreme Court held that exposure of an airline passenger's luggage to a drug-sniffing dog did not constitute a search within the meaning of the Fourth Amendment. *Id.* at 707, 103 S.Ct. at 2644–45. The Court based its ruling upon the fact that a "canine sniff" causes a very limited intrusion, in terms of both the manner in which the information is obtained, and the content of the information revealed. *Id.* The luggage need not be opened to conduct the canine sniff, and non-contraband items are not exposed to police or public view. Moreover, the only information obtained is whether or not the luggage contains drugs. No reasonable expectation of privacy is infringed, and therefore no "search" occurs. *Id.* This court has likewise held that a passenger on a common carrier has no reasonable expectation of privacy in the exterior of his luggage or the airspace surrounding it. *United States v. Guzman,* 75 F.3d 1090, 1094 (6th Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 266, 136 L.Ed.2d 190 (1996). The district court was thus correct in concluding that the exposure of defendant's bag to the drug-sniffing dog did not constitute a search.

■ The district court also concluded that moving defendant's bag from the overhead compartment to the seat did not constitute a seizure, because its removal caused no meaningful interference with defendant's possessory interest in the bag. The court noted that defendant had left the bag unattended, that its removal from the open compartment above his seat was temporary and did not impair his access to the bag, and that defendant's continued travel would not have been interrupted had the dog not detected drugs in his bag.

On appeal, defendant attempts to distinguish his case from *United States v. Harvey,* 961 F.2d 1361 (8th Cir.1992), a case with very similar facts [1] which was cited by the district

1. *Harvey* involved a narcotics sweep on a Greyhound bus at a stop in Little Rock, Arkansas. After all of the passengers exited the bus, and following the drug-sniffing dog's "air sniff," the baggage was removed from the overhead compartment and placed at the dog's level. After the dog alerted to two bags, indicating that they might contain drugs, the officers returned all of the bags to the overhead compartment. The passengers reboarded the bus, and the officers then asked to whom the suspicious bags belonged. The defendants claimed the bags, which were discovered to contain marijuana. The court of appeals ruled that the conduct of the officers did not amount to a "seizure." 961 F.2d at 1364. The only factual difference between the instant case and *Harvey* is that the conduct of the dog prior to the sweep in *Harvey* gave the officers reasonable suspicion that there were drugs on the bus. However, as discussed above, this finding was not necessary to support the district court's holding that there was no "seizure."

court. In *Harvey*, officers brought a drug-sniffing dog aboard a bus, and the dog gave an "air sniff," lifting his head high and sniffing at the air above him. This was an indication that there were drugs somewhere on the bus above the level of the dog's head. The Eighth Circuit noted that the dog's air sniff gave the officers reasonable suspicion that the overhead luggage compartment contained contraband. Defendant contends that since there was no such reasonable suspicion here, the evidence from the canine sniff of his bag should be suppressed. However, this argument ignores the fact that the result in *Harvey* did not turn on the presence of reasonable suspicion. Instead, the court held explicitly that "because there was no meaningful interference with appellants' possessory interests in their baggage, . . . no seizure occurred." *Id.* at 1364. That there was no reasonable suspicion involved in defendant's case does not diminish *Harvey's* persuasive value. In fact, this court has rejected just such an attempt to distinguish *Harvey*, stating that "[i]f the defendant had no reasonable expectation of privacy in his bag to begin with, then [the officer's conduct] was not a search or seizure under the Fourth Amendment regardless of whether the officer had reasonable suspicion or no suspicion" when he acted. *United States v. Guzman*, 75 F.3d 1090, 1094 (6th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 266, 136 L.Ed.2d 190 (1996).

In focusing his efforts upon distinguishing *Harvey*, defendant fails to address the district court's ruling that no seizure occurred here because the facts of the case reveal that there was no meaningful interference with defendant's possessory interest in his bag. The bag was moved only a short distance (from an open overhead compartment to the seat below), for a short time (just long enough for the dog to walk up and down the aisle), and the movement occurred at a time when defendant had left the bag unattended, so his access to it was never impaired. Finally, had the dog not indicated that the bag contained drugs, defendant would have been able to travel uninterrupted to the next stop with his bag. Because there was no meaningful interference with defendant's possessory interest in his bag, there was no seizure.

Since the sweep involved neither a search nor a seizure, none of defendant's Fourth Amendment rights were implicated. The district court was therefore correct in denying his motion to suppress.

■ When law enforcement officers rely upon consent as the basis for a warrantless search, the scope of the consent given determines the permissible scope of the search. *Florida v. Jimeno*, 500 U.S. 248, 251–52, 111 S.Ct. 1801, 1803–04, 114 L.Ed.2d 297 (1991). The standard for measuring the scope of the consent given is objective reasonableness— "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id.* at 251, 111 S.Ct. at 1803–04.

■ Defendant contends that the search of his bag exceeded the scope of his consent, because his affirmative response to Officer Bell's request to "look" in his bag limited the scope of the search to a visual inspection, and because it is not objectively reasonable to interpret defendant's consent as extending to the opening of closed containers within the bag (such as the box of Tide).

The district court was correct in its view that the use of the term "look" placed no particular limitations on the scope of the search. Applying the *Jimeno* objective reasonableness test, a reasonable person would understand that a request by a police officer to "look" in a bag seeks consent to search the bag for evidence of illegal activity. Other courts of appeals considering this issue have eschewed fine semantic distinctions, refusing to allow the Fourth Amendment analysis to turn on the officer's choice of words. In *United States v. Rich*, 992 F.2d 502 (5th Cir.1993), for example, the court considered the scope of the consent given by a defendant's affirmative response to an officer's request to "have a look in" his pick-up truck. The defendant in *Rich* argued that this language allowed the officer to conduct a visual inspection only, but the court stated that it

decline[d] the defendant's invitation to establish a list of specific terms from which an officer must select the most appropriate for each individual situation and/or defendant. To so hamper law enforcement offi-

cials in their everyday duties would be an unjustifiable extension of the Fourth Amendment's requirement that searches be "reasonable." Several other circuits have held that a request to "look in" or "look through" ... is the equivalent of a request to "search".....

We take this opportunity to establish a similar rule for our own circuit: it is not necessary for an officer specifically to use the term "search" when he requests consent....

*Rich,* 992 F.2d at 506 (citing *United States v. Espinosa,* 782 F.2d 888, 892 (10th Cir.1986); *United States v. Harris,* 928 F.2d 1113, 1117 (11th Cir.1991)). We agree with the Fifth Circuit's conclusion in *Rich* that "any words, when viewed in context, that objectively communicate to a reasonable individual that the officer is requesting permission to [conduct a search] constitute a valid search request" for Fourth Amendment purposes. 992 F.2d at 506.

■ The district court was also correct in finding that the opening of the box of Tide did not exceed the scope of defendant's consent. Ordinarily, "general consent [to a search] permits the opening of closed but unlocked containers found in the place as to which consent was given." *See* Wayne R. LaFave, Search and Seizure, § 8.1(c) & n. 75 (1986). Given the Supreme Court's statement in *Jimeno* that "[t]he scope of a search is generally defined by its expressed object," 500 U.S. at 251, 111 S.Ct. at 1804, it is particularly important to allow searches of closed containers in cases where the suspect is told that officers are searching for drugs, since drugs are often stored in such containers. However, other courts have held that searches of closed containers should be allowed in cases like this one, where officers did not tell the suspect the object of their search. *See, e.g., United States v. Crain,* 33 F.3d 480 (5th Cir.1994) (holding that consent to search vehicle included consent to search paper bag contained therein, despite fact that officers gave no indication as to what they were looking for); *see also* LaFave, *supra,* § 8.1(c) n. 76.

■ This analysis is particularly applicable to luggage search cases, since the luggage of a typical traveler is likely to include numerous containers, such as those in which health and hygiene products are packaged. A reasonable person who consents to a search of one of his bags would not expect the officer to repeat his request for consent before examining each new item encountered in the bag. *See United States v. Battista,* 876 F.2d 201 (D.C.Cir.1989) (holding that consent to search luggage included consent to search plastic bags contained therein and stating that the court refuses to turn such searches into games of "Mother–may–I"). That approach would be unduly burdensome, and inconsistent with the objective reasonableness standard established by the Supreme Court in *Jimeno.*

Since we conclude that this was a valid consent search, we need not consider the government's argument that the search was also justified under the "search incident to arrest" exception to the warrant requirement.

### III.

The district court's denial of defendant's motion to suppress is hereby **affirmed.**