**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Vashaun Eric HUMPHREY,**
**Defendant–Appellant.**

No. 99–6498.

United States Court of Appeals,
Sixth Circuit.

March 13, 2002.

Before BATCHELDER, COLE, and BECKWITH,* Circuit Judges.

BATCHELDER, Circuit Judge.

## I.

Defendant–Appellant Vashaun Humphrey was indicted for possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Humphrey moved to suppress the evidence obtained as a result of an illegal search performed when the vehicle in which he was a passenger was stopped for a traffic violation. The district court denied Humphrey's motion to suppress. We affirm.

## II.

Shelby County Deputy Sheriff Warren Jones was parked at a gas station in his marked police car on March 26, 1999, at approximately 5:30 in the evening when he saw a gold Chevrolet Caprice Classic pull into the parking area across the street. The gold car caught Jones's attention because of its expensive gold rims. Jones then observed Humphrey standing beside the car talking to someone in the car. As Jones watched, Humphrey looked around as if to see if anyone was watching, walked over to a red car parked nearby and pulled a duffle bag from the back of that car, looked around again and, with his head down, walked "kind of fast" back to the gold car. All the while, Jones said, there was another man standing near the front of the red car who appeared to Jones to be acting as a lookout. Humphrey–with the duffel bag–got into the gold car, which began to pull out into the street. Suspecting that he was witnessing drug activity, Jones radioed for backup. At that point, he saw the red car, driven by the man who had been standing near it, head off in the opposite direction.

The gold car turned right out of the parking lot onto the street, and Jones pulled in directly behind it. Jones stated that while behind the gold car he observed Humphrey and the driver sitting perfectly motionless, and he could see that the driv-

---

* The Honorable Sandra S. Beckwith, United States District Judge for the Southern District of Ohio, sitting by designation.

er was looking at Jones through his rear view mirror without cocking his head.

What occurred next is the major source of controversy. Jones claimed that shortly after leaving the parking lot, the gold car drove through a red light, giving him probable cause to stop the vehicle; Humphrey claimed the light was green or yellow, and Jones did not have probable cause to stop the car. The color of the light is crucial because under Tennessee law a car may legally enter an intersection on a yellow but not on a red light. Tenn.Code Ann. § 55–8–110.

In any event, Jones stopped the gold car and exited his patrol car. The driver–who turned out to be Humphrey's cousin Robert Benton–was already out of his car and walking towards Jones. Jones told Benton the reason for the stop and noticed that Benton was extremely nervous, sweating profusely even though it was a cool day. Jones requested and received Benton's driver's license, and had Benton move with him to the back of the gold car, away from traffic. Meanwhile, Humphrey was still sitting in the passenger seat of the gold car, straining to watch Jones and Benton and apparently unfastening his seat belt. By this time, Jones's backup had arrived, and that officer watched Humphrey while Jones put Benton in the back of the patrol car, ran a license check and questioned him. Jones obtained Benton's oral and written consent to search the vehicle, and learned from Benton that the duffle bag belonged to Humphrey.

Jones and his backup officer asked Humphrey to get out of the gold car. Humphrey did not respond, and Jones, fearing that Humphrey might do something dangerous in an attempt to escape, grabbed him and pulled him from the car.

Once he was out of the car, Humphrey orally consented to a search of the duffel bag. The bag contained a quantity of crack cocaine. Jones also conducted a pat-down search of Humphrey, and found $2665.00 in cash, folded in what Jones described as a "dope-dealer fold."

On March 26, 1999, Humphrey was indicted on one count of possession with intent to distribute approximately 376.8 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Humphrey moved to suppress all of the evidence [1] resulting from the stop of the car and the ensuing search, claiming that Jones had neither probable cause nor reasonable suspicion to stop the car and search its contents.

At the hearing on the motion to suppress, Jones testified that "[a]s he [the gold car] made that right turn at the intersection, the light was yellow. And as he got on his front end to get to the intersection, that light had turned red. He had plenty of time to stop at that light." Jones also said that he activated his squadron lights when he "saw him crossing the plane as far as the intersection." On cross-examination, Jones was confronted with his prior deposition testimony in which he had said that the gold car had "[p]ulled up to the red light," and that "[t]he light turned yellow and the[y] continued on through the traffic light." Jones steadfastly reaffirmed the direct testimony he had just given, repeatedly stating that the light was red when the gold car *pulled into* the intersection. On redirect, the Government asked Jones to explain the response in his deposition that "It was yellow and it was red by the time he his car got almost—well, as he was pulling up, it was yellow. It was red

1. In his motion to suppress as well as in his brief on appeal, Humphrey claims that "all evidence seized and statements made" as a result of the stop of the car should be suppressed. On appeal, Humphrey points to no evidence other than the cocaine found in the duffel bag and identifies no statements at all. We will confine our attention to the cocaine.

before he pulled—he went through the light." Jones responded that "what I meant was, when he turned out the parking lot before he got his front of his vehicle in the intersection, it was yellow as he was turning.... [B]efore his front end got through that intersection the light had turned red."

Humphrey and Benton both testified at the suppression hearing. Both claimed that Benton did not run a red light; they insisted that the light was red when they pulled out of the parking lot onto the street; that they pulled in behind a black truck waiting for the light to turn green; and that it was only after proceeding through the green light that they were stopped. Humphrey also denied that he had given any consent for the search of his duffle bag.

The district court denied the motion to suppress. The court reviewed the testimony in some detail stating, as part of that review, that Jones "testified that the light was yellow at the time Mr. Benton's car entered into the intersection, but was red before he cleared the intersection. He then pulled the Caprice over for the traffic violation [of] running a red light." Despite this statement, and even though it found that Benton's and Humphrey's testimony regarding the black truck was credible, the court explicitly stated at two separate points in its findings that Jones's testimony regarding the stop was credible. The court reviewed the testimony of an engineer who testified on behalf of the defense at the hearing, concluding that the engineer's testimony did not demonstrate that Benton could not have run the red light. On the basis of Jones's testimony, the court concluded that Jones had probable cause to make the traffic stop. The court further held that, based on Jones's observations and past experience, he had a reasonable suspicion that the occupants of the car were involved in drug activity, which also was a permissible basis for the stop.

On appeal Humphrey challenges the district court's denial of his motion to suppress the cocaine base found in his duffel bag by Officer Jones.

## III.

A district court's factual findings pursuant to a suppression hearing are reviewed for clear error while the court's legal conclusions are reviewed de novo. *Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *United States v. Wellman,* 185 F.3d 651, 654–55 (6th Cir.1999). The lower court's application of the legal standard to the facts is also reviewed de novo. *Ornelas,* 517 U.S. at 699; *United States v. Waldon,* 206 F.3d 597, 602 (6th Cir.2000). This court must review the evidence in the light most favorable to the government. *United States v. Erwin,* 155 F.3d 818, 822 (6th Cir.1998).

■ If Jones's stop of the car was based neither on probable cause to believe that it was involved in a traffic violation nor reasonable suspicion that the occupants were engaged in illegal activity, the ensuing search was illegal and the evidence obtained is inadmissible against Humphrey unless the government can demonstrate that the evidence was obtained independently of the illegal search. *See Wong Sun v. United States,* 371 U.S. 471, 485, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Here, if the Defendant was illegally stopped, then the consent obtained was likely a product of that illegal stop and was vitiated. *See e.g. United States v. Fernandez,* 18 F.3d 874 (10th Cir.1994) (holding that consent given immediately after an illegal stop was vitiated by the illegality). But if Jones had probable cause to stop the car, no matter what his true motive, the stop was constitutional. *Whren v. United States,* 517 U.S. 806, 814–16, 116 S.Ct. 1769, 135

L.Ed.2d 89 (1996); *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir.1993). An officer who observes a traffic violation has probable cause to stop the car involved. *Ferguson*, 8 F.3d at 391.

Humphrey argues that the district court correctly found that the car in which he was riding entered the intersection on a yellow light, and that the court therefore could not hold–consistent with Tennessee law–that Jones had probable cause to stop the car. Humphrey also claims that the district court erred in finding reasonable suspicion. He concedes that if the light was red when the car entered the intersection, Jones had probable cause to make the stop and whether Jones had reasonable suspicion is irrelevant. The Government argues that the district court judge's repeated crediting of Jones's testimony regarding the circumstances of the stop requires the conclusion that the judge simply misspoke in summarizing that testimony, and that her findings of probable cause and reasonable suspicion are consistent with the evidence adduced at the hearing.

After a thorough review of the record, we think it is clear that the trial judge misspoke when referring to Jones's testimony. The court thrice credited Jones's testimony with regard to the color of the stoplight when Benton entered the intersection, but found Humphrey's and Benton's testimony[2] credible only as to the black truck they claimed to have been behind. We are bound by those credibility determinations. *United States v. Wellman*, 185 F.3d 651, 656 (6th Cir.1999). The district court exhibited no confusion about the requirements of the applicable Tennessee traffic law and found probable cause to believe that Benton had violated that law, a conclusion that requires the finding that Benton drove into the inter-

section when the light was red. Finally, while Jones's testimony at the suppression hearing is, overall, not a model of clarity, he could not have been more clear that he had never held or expressed any view other than that Benton's car came into the intersection on a red light and that he saw no inconsistency between his deposition testimony and his trial testimony. We conclude that the district court did not err in holding that Jones had probable cause to stop Benton's car.

Because Officer Jones had probable cause to stop the car in which Humphrey was riding, the stop was constitutional. As a result, we need not reach the issue of whether Jones had a reasonable suspicion sufficient to stop the vehicle. We must determine, however, if Jones had either probable cause, reasonable suspicion, or consent to search the duffle bag. This is because the probable cause for the stop of the vehicle did not extend to a search of Humphrey's bag. To search the bag Jones needed an independent justification.

### IV.

This court can affirm a judgment of the district court that is correct, even if the district court did not provide the correct reason for that judgment. *J.E. Riley Inv. Co. v. Comm'r of Internal Revenue*, 311 U.S. 55, 59, 61 S.Ct. 95, 85 L.Ed. 36 (1940). If we determine, after our review of the record, that the district court's denial of Humphrey's motion to suppress is proper for a reason the district court did not consider, we must affirm. *Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.*, 772 F.2d 214, 216 (6th Cir.1985).

■ Citing *Wyoming v. Houghton*, 526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999), the district court held that Hum-

---

**2.** Benton and Humphrey testified that the light was green. The Government notes that on appeal even Humphrey is not claiming the light was green but that it was yellow as the car entered the intersection.

phrey's consent to the search of his duffle bag was unnecessary because Benton's consent to search the car extended to any containers inside the vehicle, including the black duffel bag. The district court's application of *Houghton* is erroneous. *Houghton,* building on the holding in *United States v. Ross,* 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."), held that where officers have probable cause to believe that there is contraband in a properly stopped car, they may search the car's contents, including possessions of passengers in the car. *Houghton,* 526 U.S. at 307. *Houghton* did not deal with a consensual search. The scope of consent to a search must be measured by what a "reasonable person [would] have understood by the exchange between the officer and the suspect." *Florida v. Jimeno,* 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). In other words, the standard for determining the scope of the consent is one of objective reasonableness. *United States v. Gant,* 112 F.3d 239, 242 (6th Cir.1997).

Here, Benton's consent was not sufficient to permit Jones to search the black duffel bag. Jones knew from his conversation with Benton that the bag belonged to Humphrey, and he could not reasonably have thought otherwise. The district court's error does not require reversal, however, because the record reveals that Humphrey himself consented to Jones's search of the black bag. Jones testified that, after learning from Benton that Humphrey was the owner of the duffel bag, he asked for and obtained Humphrey's consent to search the bag.[3] Since a reasonable person standing in Officer Jones's shoes would have understood Humphrey's response as permission to search the bag, Jones's search of the bag was consensual and therefore constitutional.

## CONCLUSION

Accordingly, we **AFFIRM** the judgment of the district court denying the motion to suppress.

---

**3.** A.... And then I asked him about the duffel bag that was in the back seat.
Q. Did he respond?
A. He said, "They just my clothes in there," I said, "Well can I take a look in it? He said, It's just my clothes in there." He repeated that again. And I asked him can I take a look, and he yes, just my clothes in there....

Q.... [D]id he say anything to you that you interpreted permission to look in the bag?
...
A. After I asked him can I take a look in it he said yes.