**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0793n.06
Filed: October 24, 2006

**No. 05-6587**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| STEWART SIMMONS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

_____

BEFORE: MERRITT, SUTTON, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant-appellant Stewart Simmons pleaded guilty to one count of possession with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. § 841(a)(1). He now appeals the order of the district court denying his motion to suppress evidence found in a vehicle after he was stopped and ticketed for speeding. Defendant purportedly consented to a warrantless search of the car, which yielded two kilograms of cocaine in a suitcase in the backseat of the car. Defendant does not challenge the district court's findings that there was probable cause for the traffic stop and that the length of the stop was reasonable. Instead, defendant claims that his alleged "consent" was ambiguous and equivocal and, thus, an invalid justification for the warrantless search. Further, he

asserts that his alleged consent, if deemed legitimate, did not extend to a search of the closed suitcase. For the reasons set forth below, we affirm.

I.

On February 17, 2005, at approximately 8:50 a.m., defendant, while traveling westbound in a Ford Expedition on Interstate 24 in Rutherford County, Tennessee, passed an unmarked patrol car at a speed in excess of 82 miles per hour, in violation of the 70 miles-per-hour speed limit. Rutherford County Deputy Lee Young activated his lights and pulled defendant over to the side of the highway. Deputy Young, who was trained in drug interdiction, was uniformed, armed, and accompanied by a drug-detection dog. The patrol car was equipped with video and audio equipment that Deputy Young activated prior to stopping defendant's vehicle.

Deputy Young approached the driver's-side door. When defendant lowered the window, Deputy Young was overwhelmed by the strong odor of air freshener and observed multiple air fresheners hanging from the mirror. Deputy Young engaged in conversation with defendant, who was the sole occupant of the vehicle, regarding the reason for the stop. Deputy Young explained the violation and requested identification. Defendant produced his valid driver's license and car registration, which was in another person's name. Defendant informed Deputy Young that he had borrowed the vehicle from a friend to use for five or six days while visiting his daughter in Kentucky.

Several observations aroused Deputy Young's suspicions that illegal activity might be afoot. When defendant produced his driver's license, he was, by Deputy Young's account, nervous and

shaking. The odor from the air fresheners was breathtaking and, in Deputy Young's experience, indicated that defendant might be attempting to disguise the odor of illegal narcotics. In the course of looking for the registration, defendant pulled down the visor, which revealed a booking card from Georgia with a photo of a black male on it. Deputy Young observed that defendant surreptitiously closed the visor. Finally, Deputy Young found it unusual that such an immaculately-kept vehicle would be loaned out to another individual for an extended period of time.

Deputy Young retained defendant's license and directed defendant to move his vehicle onto the grass shoulder for safety reasons. He then had defendant stand between the two vehicles, in front of the patrol car, where the video and audio recorded their images and conversation. Standing next to defendant, Young wrote out a speeding citation.[1] While doing so, he questioned defendant about where he was going, why he was going there, who owned the vehicle, and what his employment was. Deputy Young advised defendant that he not only enforced traffic violations, but also investigated "secondary crimes" in vehicles and asked defendant if there was any illegal contraband in the car, such as firearms, illegal drugs, or large sums of money. Defendant denied transporting such items. Deputy Young next inquired whether defendant or anyone associated with the car used illegal drugs that the deputy's drug dog might "hit on," and defendant answered "no." Deputy Young then asked defendant, "Do you have any problem with me searching?" Defendant responded that he had "no

---

[1]It is undisputed that defendant admitted to Deputy Young that he exceeded the speed limit, telling the deputy that he was traveling with his cruise control set at approximately 78 miles per hour.

problem" with such a search. Immediately thereafter, defendant consented to a body search, which yielded no illegal items or weapons.

Deputy Young searched the vehicle by first opening the driver's door. Having found, in previous instances, narcotics in vehicle doorways, Deputy Young sought to roll down the electric windows, but had to return to defendant to retrieve the keys in order to start the car to open the windows. Defendant gave him the keys without protest, and Deputy Young searched the front compartment of the vehicle. He then turned his attention to the back seat area, where he found a suitcase. He opened it up by undoing the zipper and found a variety of clothes and two taped packages containing a compressed white powder, ultimately determined to be two kilograms of cocaine.

Deputy Young returned to defendant and placed him under arrest. While handcuffing defendant, Deputy Young advised him of his *Miranda* rights and moved defendant off to the side of the car beyond the visual range of the video. The deputy asked defendant whether he was carrying the drugs for friends or family; defendant responded "no" and requested an attorney. Deputy Young then asked two additional questions, to which defendant provided short answers and again requested an attorney. At this time, all questioning ceased.

Defendant was charged in federal court with one count of possession with the intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1). Defendant filed a motion to suppress the evidence and statements obtained during the traffic stop, alleging that he did not voluntarily consent to the search of the vehicle and suitcase.

On June 20, 2005, the district court held an evidentiary hearing on defendant's motion. The evidence presented at the hearing consisted of the testimony of Deputy Young and the videotape and audio of the traffic stop, which was played during Deputy Young's testimony.[2] The videotape displayed the continuous running time of the events in question. The district court found, consistent with the times indicated on the video, that no more than five minutes passed between the time that Deputy Young stopped defendant's car and the time defendant gave his consent to search the vehicle.

At the conclusion of the hearing, the district court denied defendant's motion to suppress the cocaine seized following the warrantless search of the car and the suitcase, but ordered that defendant's suppression motion be granted with regard to the statements made by defendant to Deputy Young after he requested counsel.[3] In its oral decision, the district court found there was probable cause for the traffic stop. The court further found that the length of the stop was minimal and reasonable and did not amount to a Fourth Amendment violation. The court further held that defendant consented to the search – first verbally and then, after the search had commenced, nonverbally by turning over the car keys. The court held that this consent was voluntary, noting that, as reflected in the videotape, the questioning by Deputy Young was not coercive or overbearing, but polite and business-like. The court further adjudged, from the totality of the circumstances, that "in

---

[2]As the evidentiary hearing record indicates, the audio system apparently was not functioning properly during the traffic stop. Although some of the conversation between Deputy Young and defendant was comprehensible, the district court relied on Deputy Young's testimony regarding the dialogue.

[3]The district court's suppression of defendant's statements is not an issue on appeal before this court.

the context of this case where the officer made it clear he wanted to search for drugs[,] that the search of the suitcase was within the scope of the consent."

On July 18, 2005, defendant entered a plea of guilty to the indictment, reserving his right to appeal the district court's denial of his motion to suppress the evidence. On October 7, 2005, the court sentenced defendant to a five-year term of imprisonment. Defendant now timely appeals.

II.

Defendant first contends that the district court erred in denying his motion to suppress the evidence because the government did not meet its burden of proving by clear and positive testimony that defendant gave Deputy Young unequivocal and specific consent to search his vehicle.

In reviewing the denial of a motion to suppress, this court reviews the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (en banc).[4] In such a review, this court considers the evidence in the light most favorable to the government. *United States v. Caruthers*, 458 F.3d 459, 464 (6th Cir. 2006). "'A factual finding will only be clearly erroneous when, although there may be evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake

---

[4]Although defendant suggests that de novo review of both the factual findings and legal conclusions is appropriate, we decline to deviate from the well-established "clearly erroneous" standard in this case, where the central issue, the voluntariness of defendant's consent to a search, is a question of fact to be determined by the totality of the circumstances. *United States v. Worley*, 193 F.3d 380, 384-85 (6th Cir. 1999).

has been committed.'" *United States v. Pruitt*, 458 F.3d 477, 480 (6th Cir. 2006) (quoting *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999)).

As previously noted, defendant does not challenge the district court's findings that there was probable cause for the traffic stop and that the length of the stop was reasonable. Defendant's argument focuses solely on the viability of his consent to the search. As explained in *United States v. Erwin*, 155 F.3d 818 (6th Cir. 1998) (en banc):

> A law enforcement officer does not violate the Fourth Amendment merely by approaching an individual, even when there is no reasonable suspicion that a crime has been committed, and asking him whether he is willing to answer some questions. This includes a request for consent to search the individual's vehicle. . . . And, this consent is not vitiated merely because the valid suspicion of wrongdoing for which an individual has been stopped proves to be unfounded or does not result in prosecution and the individual is free to go before being asked. Of course, when a law enforcement officer no longer has any reasonable suspicion of criminal activity, the detained individual is constitutionally free to leave, and if the officer rejects the individual's indication that he would like to leave, valid consent can no longer be obtained. The fruits of a search conducted under these circumstances would have to be suppressed.

*Id*. at 823 (citations omitted).

Whether consent to a search was in fact voluntary or was the product of duress or coercion is a question of fact to be determined from the totality of the circumstances. *Id.* This court will not reverse the district court's findings in this regard absent clear error. *Worley,* 193 F.3d at 384. In order to justify a search by consent, the government must prove by "clear and positive testimony" that the consent was voluntary and "unequivocally, specifically, and intelligently given, uncontaminated by any duress and coercion." *Id.* at 385-86 (internal citations omitted). Factors that the court should consider in assessing the validity of consent include the age, intelligence, and

education of the individual; whether the individual understands the right to refuse to consent; whether the individual understands his constitutional rights; the length and nature of detention; and, the use of coercive or punishing conduct by the police. *Id.* at 386. "The defendant's knowledge of his right to refuse to consent is a factor, but the government need not prove that the defendant had such knowledge to establish that consent was voluntary." *Erwin*, 155 F.3d at 823.

The core of defendant's argument is that Deputy Young's series of investigatory questions – (1) do you have drugs in the car?; (2) do you have reason to think there is a scent my dog would "hit on"?; and, (3) do you have a problem with me searching? – were posed in such a manner that they were ambiguous and generated an ambiguous response from defendant. According to defendant, the second question indicated that Deputy Young wanted to conduct a sniff search using his drug dog and, when this second query is considered in conjunction with the third question, it was reasonable for defendant to believe that the term "searching" referred to a sniff search, not a full-blown vehicle inspection. Defendant contends that his "no problem" reply is thus rendered equivocal by the sequence of the questions and is open to several reasonable interpretations, none of which demonstrate specific and unequivocal consent: either defendant had no problem with a sniff search, he was denying guilt, or he simply was acceding to authority and "conveying an expression of futility in resistance to authority or acquiescing in the officer['s] request" because the officer indicated that the search was ongoing. *Worley*, 193 F.3d at 386. Using the analogy of a contractual agreement, defendant asserts that the verbal exchange does not demonstrate a meeting of the minds regarding the intended action of the deputy and defendant's concomitant acquiescence.

It therefore does not constitute "clear and positive proof" of the voluntary consent necessary to justify a warrantless search of the interior of the vehicle. Defendant adds that Deputy Young dominated the physical situation – he was uniformed and armed, he asked and phrased all of the questions, and he continued to detain defendant when he questioned him. Defendant notes that Deputy Young neither informed defendant of his right to withhold consent nor utilized his department's preprinted consent form.

Under the totality of the circumstances, however, the record reveals none of the ambiguities suggested by defendant. Defendant, a middle-aged male, engaged in an intelligent conversation with Deputy Young, describing, among other things, the location of his home, his health, the circumstances of his speeding violation, as well as his outright denial of the possession of drugs or large quantities of money in his vehicle. Deputy Young was in the process of completing the warning citation for speeding and was four minutes into a conversation with defendant when defendant consented to a search of the vehicle. There was no delay beyond the time necessary for Deputy Young to complete the purpose for the traffic stop. In a straightforward and polite manner, Deputy Young made clear, through his questions, that he was asking for defendant's consent to search the vehicle for illegal drugs. There was no equivocation in defendant's "no problem" response and no indication that defendant misunderstood the request.

Defendant's reliance on *Worley* is misplaced. This court in *Worley* held that the defendant's response to an officer's request to search his bag was ambiguous under the totality of the circumstances, when the defendant replied, "You've got the badge, I guess you can." This response

differs from the unequivocal and unambiguous exchange in the instant case. Here, when defendant was asked if he had any objection to the search, he replied "no problem." He then, upon request and without hesitation, provided the deputy with the car keys so that Deputy Young could access the interior of the car to roll down the windows and search that area for illegal contraband. Under these circumstances, defendant's consent is "an unequivocal statement of free and voluntary consent, not merely a response conveying an expression of futility in resistance to authority or acquiescing in the officer['s] request." *Id*. at 386.

Given the district court's opportunity to assess defendant's consent by reviewing not only the testimony of the deputy, but the videotape and audio as well, considerable deference should be accorded to its factual findings. *United States v. Lloyd*, 10 F.3d 1197, 1209 (6th Cir. 1993). Defendant's argument that he was unfairly finessed into consenting by the verbal gamesmanship of an experienced officer is therefore without merit.

III.

Defendant next contends that the district court erred in determining that the scope of his consent extended to the search of the suitcase located in the vehicle. We disagree.

Both parties properly note that the review standard is one of objective reasonableness:

"When law enforcement officers rely upon consent as the basis for a warrantless search, the scope of the consent given determines the permissible scope of the search." *United States v. Gant*, 112 F.3d 239, 242 (6th Cir. 1997). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness . . . ." *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). The proper question is "what would the typical reasonable person have understood by the exchange between the officer and the suspect." *Id*. A reasonable person likely would have understood his consent to exclude a search that would damage his property. *See*

*id.* at 251-52. Generally, the expressed object of the search defines the scope of that search. *Id*. at 251.

*United States v. Garrido-Santana,* 360 F.3d 565, 575-76 (6th Cir. 2004).

A defendant's general consent to search a vehicle has been held to encompass the vehicle's gas tank, *Garrido-Santana*, 360 F.3d at 576, and *Jimeno*, 500 U.S. at 252; a vehicle's vent panel, *United States v. Pena*, 920 F.2d 1509, 1514-15 (10th Cir. 1990); the interior door panel of a car, *United States v. Zapata*, 180 F.3d 1237, 1243 (11th Cir. 1999); and a closed, unlocked container within another bag, *Gant*, 112 F.3d at 242.

Here, the typical reasonable person would have understood defendant's "no problem" response to the deputy's questions, coupled with the physical act of handing the car keys to the deputy without protest, to constitute a consent to search the vehicle and any containers within the vehicle that might hold illegal contraband.

We therefore affirm the order of the district court denying defendant's motion to suppress evidence.