DeWine, J., dissenting.
{¶ 68} The retrieval of Jamie Banks-Harvey's purse from a car was not an illegal seizure, and the subsequent inventory search of the purse was not an illegal search. Thus, her motion to suppress was properly denied. Because the lead opinion concludes differently-and misapplies Fourth Amendment law on the way-I respectfully dissent.
{¶ 69} For the most part, the lead opinion takes no issue with the Ohio State Highway Patrol trooper's actions in this case. The lead opinion agrees that the stop of the car driven by Banks-Harvey and her subsequent arrest for an outstanding warrant were lawful. Further, the lead opinion recognizes that an inventory search is a "well-defined exception to the Fourth Amendment's warrant requirement." Lead opinion at ¶ 20. And according to the lead opinion, "it is not unreasonable for police, as part of routine procedure incident to incarceration, to search any article or container in the arrestee's possession in accordance with established inventory procedures." Lead opinion at ¶ 21. The lead opinion doesn't even question the trooper's assertion that there was a standard policy to take a purse along with an arrestee to jail.
{¶ 70} In the end, the lead opinion's determination that the search of Banks-Harvey's purse violated the Fourth Amendment hinges on one fact-that the purse was removed from a car prior to the inventory search. With little, if any, analysis, the lead opinion concludes that the trooper did not have lawful custody of the purse when he conducted the inventory search, because he retrieved the purse "from a place that is protected by the Fourth Amendment." Lead opinion at ¶ 39. The problem with the reasoning is that it is contrary to well-established Fourth Amendment jurisprudence and misses the *280 real question: Was taking the purse from the car an illegal seizure?
The car is a nonstarter
{¶ 71} The fallacy in the lead opinion's reasoning is laid bare by reference to the Fourth Amendment itself: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *." (Emphasis added.) Two concepts bear emphasis. First, the amendment protects the right of the people, not the property. That principle is reflected in the oft-quoted line from Katz v. United States , 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) : "[T]he Fourth Amendment protects people, not places." The second point relevant here is that the amendment protects people's rights in their-not others'-effects. See generally *387 Minnesota v. Carter , 525 U.S. 83, 92, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) (Scalia, J., concurring). In other words, contrary to the lead opinion's assertion, it matters not whether the car was protected under the Fourth Amendment-it wasn't-but whether the trooper's retrieval of Banks-Harvey's purse somehow violated any interest of hers in the car.
{¶ 72} In Rakas v. Illinois , 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the court considered whether a search of a car violated the rights of passengers who did not own the car. The court concluded that the passengers could claim no violation of their Fourth Amendment rights because they had no possessory interest in the car or expectation of privacy in the places searched. Id. at 148, 99 S.Ct. 421. Although here, Banks-Harvey was the driver of the car, rather than a passenger, Rakas 's analysis applies. The car was not Banks-Harvey's; it belonged to Charles Hall. According to Hall, he had allowed Banks-Harvey to drive the car only because he had hurt his hand. Like the passengers in Rakas , Banks-Harvey had neither a possessory interest in the car nor an expectation of privacy in the car.
The focus should be on the purse
{¶ 73} By directing its focus onto the car, the lead opinion blurs the real object of interest-the purse. There is no question that Banks-Harvey had a possessory interest in her own purse. The question is whether that interest was infringed upon by the trooper. In other words, was there an unreasonable seizure or an unreasonable search of the purse? I would hold that there was neither. The removal of the purse from the car was not a "seizure" under the Fourth Amendment. And even if it were a seizure, the removal of the purse from the car would not have been unreasonable. Moreover, the subsequent inventory search of the purse was lawful.
{¶ 74} The Fourth Amendment proscribes unreasonable searches and seizures. While the prohibition against unreasonable searches protects "the interest in maintaining personal privacy," the prohibition against unreasonable seizures protects "the interest in retaining possession of property." Texas v. Brown , 460 U.S. 730, 747, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (Stevens, J., concurring). "[N]ot every governmental interference with a person's property constitutes a seizure of that property under the Constitution." United States v. Va Lerie , 424 F.3d 694, 702 (8th Cir.2005). Rather, "[a] 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." United States v. Jacobsen , 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984).
{¶ 75} Although caselaw from the United States Supreme Court on what constitutes a seizure of property is scant, id . at fn. 5, lower federal courts have provided some guidance. In determining whether the removal of a checked or *388 stowed bag *281 from a bus amounts to "meaningful interference," courts have focused on the duration of the bag's detention and the distance that the bag was moved, the extent of the owner's possessory interest at the time of the removal, and whether the owner's movement was impeded by the removal. Thus, in United States v. Gant , 112 F.3d 239 (6th Cir.1997), the Sixth Circuit Court of Appeals held that the removal of a bag from an overhead compartment on a bus so that it could be examined by a drug-sniffing dog was not a seizure. In concluding that police had not meaningfully interfered with the owner's possessory interest in the bag, the court noted that it had been moved only a short distance for a brief time, that the removal had occurred after the bag was left unattended by the owner, so the owner's access had not been impaired, and that absent the subsequent indication by the dog that the bag contained drugs, the owner's travel would not have been interrupted. Id. at 242. The Eighth Circuit Court of Appeals similarly determined that removal of a checked bag from a bus to take it to the bus terminal to seek consent for a search did not amount to meaningful interference to trigger a violation of the Fourth Amendment. Va Lerie .
{¶ 76} In this case, the trooper retrieved Banks-Harvey's purse to bring it with her to the jail. At the time he retrieved the purse, Banks-Harvey's possessory interest in it was diminished; she had lost access to her purse when she was put in the cruiser. And the retrieval of the purse did not impede Banks-Harvey's movement. She had already been detained. Indeed, it is hard to see how the trooper "meaningfully interfered" with Banks-Harvey's possessory interest when his intent in retrieving the purse was to be sure that it went with her to the jail. I would conclude that his retrieval of the purse was not a seizure under the Fourth Amendment.
{¶ 77} Setting aside the question whether there was a seizure here, I would conclude that, in any event, there was no unreasonable seizure. The trooper's testimony that he acted pursuant to standard procedure that a purse goes with an arrestee was not disputed. The policy makes sense. A purse could hold identification, money, medication, or other items needed at the jail. And taking and inventorying an arrestee's purse and its contents protects police from claims that the purse was left in an unsafe place and was stolen. See also United States v. Perea , 986 F.2d 633, 643 (2d Cir.1993), quoting Cabbler v. Superintendent, Virginia State Penitentiary, 528 F.2d 1142, 1146 (4th Cir.1975) ("When a person is arrested in a place other than his home, the arresting officers may 'impound the personal effects that are with him at the time to ensure the safety of those effects or to remove nuisances from the area' ").
{¶ 78} In her opinion concurring in judgment only, Justice Kennedy refers to the trooper's comment that he did not intend to take Banks-Harvey to the station himself. Instead, he was going to hand her over to law-enforcement officers from *389 Montgomery County. Nonetheless, this detail about the planned transport of Banks-Harvey does not change the fact that the trooper retrieved the purse so it could accompany her to jail. The fact that a law-enforcement officer from Montgomery County, instead of the trooper, might actually drive Banks-Harvey to the police station does not make unreasonable the policy that a purse accompanies an arrestee.
{¶ 79} The opinion concurring in judgment only also challenges the reasonableness of a policy that requires that personal effects go with an arrestee when the effects were not with the person when he or she was arrested and when they are in *282 a secure location. The opinion emphasizes that Banks-Harvey's purse was in the car with Hall, Banks-Harvey's live-in boyfriend. It may well be that in this case, Banks-Harvey's purse would have been secure if left behind, but the point of a policy is to give troopers guidelines so that they don't have to undertake the responsibility of assessing the security of an item on a case-by-case basis. " ' "[A] single familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront." ' " Illinois v. Lafayette , 462 U.S. 640, 648, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983), quoting New York v. Belton , 453 U.S. 454, 458, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), quoting Dunaway v. New York , 442 U.S. 200, 213-214, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). And surely it is not unreasonable to have a policy that generally recognizes that a person's effects are more secure with the person than with someone else, even if that someone else is a live-in boyfriend. Moreover, as the opinion concurring in judgment only acknowledges, "the 'reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative "less intrusive" means.' " Opinion at ¶ 54, quoting Lafayette at 647, 103 S.Ct. 2605.
The inventory search of the purse was lawful
{¶ 80} Because he properly took the purse from the car, the question becomes whether it was lawful for the trooper to search it without a warrant. As acknowledged in the lead opinion, an inventory search of personal effects is a recognized exception to the requirement that searches be conducted pursuant to warrants. See Lafayette at 643, 103 S.Ct. 2605.
{¶ 81} In Lafayette , the defendant was arrested in a theater for disturbing the peace. At the police station, an officer conducted a search of a shoulder bag the defendant had carried with him to the station and discovered drugs. The court concluded that the search of the bag "in accordance with established inventory procedures" had been reasonable. Id. at 648, 103 S.Ct. 2605. The court cited a "range of governmental interests" supporting the search. Id. at 646, 103 S.Ct. 2605. These interests include *390 deterring theft and false claims of theft, keeping dangerous items away from the arrestee, and confirming the arrestee's identity. Id.
{¶ 82} Here, the trooper testified that his inventory search of Banks-Harvey's purse was performed pursuant to written policy. Although the policy itself was not entered into evidence, no one challenges its existence. Although the trooper searched the purse on the hood of his cruiser rather than at the police station as in Lafayette , that difference is of no significance. The United States Supreme Court's "opinion in Lafayette * * * did not suggest that the station-house setting of the inventory search was critical to [its] holding in that case." Colorado v. Bertine , 479 U.S. 367, 373, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). What matters instead is that the inventory is done in support of the governmental interests cited above.
{¶ 83} The concurring opinion proclaims that the trooper's search of the purse was "per se invalid" because he conceded that in addition to searching the purse to safeguard its contents and to make certain it did not contain weapons, he looked for evidence of a crime. Opinion at ¶ 58. True, an inventory search, even when done according to a standard policy, is not reasonable if it is done in bad faith or for the sole purpose of investigation. Bertine at 372, 107 S.Ct. 738. But "a legitimate non-pretextual *283 inventory search is not made unlawful simply because the investigating officer remains vigilant for evidence during his inventory search." United States v. Khoury, 901 F.2d 948, 959 (11th Cir.1990), citing United States v. Orozco , 715 F.2d 158, 161 (5th Cir.1983). Here, despite the attempts to cast aspersions on the trooper's motivation, there is no evidence that the trooper's primary purpose was other than to secure the purse so that it could accompany Banks-Harvey to the station. That he was also on the lookout for illegal items does not render the inventory search unreasonable. I would conclude that the inventory search here was reasonable.
Conclusion
{¶ 84} Because I would hold that the removal of the purse from the car and the subsequent inventory search were lawful, I respectfully dissent.
O'Connor, C.J., concurs in the foregoing opinion.